IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 11-3749-TUC-CKJ(LAB) |
| Plaintiff, | REPORT AND RECOMMENDATION |
| vs. | |
| Kurt Allen Hankes, | |
| Defendant. | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress evidence for violations of the Fourth Amendment. The defendant, Kurt Allen Hankes, argues that all evidence obtained from the search of his home on September 28, 2011 must be suppressed because it was conducted by the probation officer without a warrant, probable cause, or reasonable suspicion in violation of his Fourth Amendment rights. (Doc. 46, 57). He also argues that because the federal search warrant relied on the unlawful probation search, all evidence seized by federal agents must be suppressed as the fruit of the poisonous tree.

An evidentiary hearing was held on November 29, 2012.[1] The witnesses who testified

---

[1] On that date, the government had not yet disclosed the grand jury transcript of Agent Brandt's testimony. The parties asked the Court to defer issuing its R & R until the transcript was disclosed. (Doc. 81, pp. 142-143). The Court was to be advised of the disclosure. Upon inquiry on 1/3/12, the Court was advised that the transcript was disclosed on 12/11/12.

were Pima County Adult Probation Officer Martha Esquivel; Alcohol, Tobacco, and Firearms (ATF) Special Agent Creighton Brandt, and ATF Supervisory Special Agent Rick Serrano.

**Charge:**

The defendant is charged by indictment in Count 1 with possession of ammunition by a convicted felon, in violation of Title 18 United States Code §§ 922(g)(1) and 924(a)(2), and in Count 2 with possession of an explosive by a convicted felon, in violation of Title 18 United States Code §§ 842(i)(1) and 844(a)(1).[2]

**Motion to Suppress Evidence:**

The defendant argues that his Fourth Amendment rights were violated when his home was searched by the probation officer without reasonable suspicion, probable cause, or a warrant. He claims that any evidence obtained as a result of the illegal search, including the evidence found by federal agents who secured a search warrant based on the evidence obtained during the probation search, must be suppressed.

The Court concludes the initial search by the probation officer did not require probable cause or a warrant. It required only reasonable suspicion and authorization by a condition of probation. The Court finds, however, there was no reasonable suspicion, rendering the initial search unreasonable within the meaning of the Fourth Amendment. The search warrant based on the initial unlawful search is not valid. Therefore, the evidence seized pursuant to the warrant is inadmissible in the government's case-in-chief.

**EVIDENCE:**

*Martha Esquivel*

Martha Esquivel is a Pima County Adult probation officer. (Doc. 81, p. 7). Part of her duties is to conduct random home visits of the probationers she supervises to verify that they are in compliance and to monitor their progress. (Doc. 81, p. 8). Probationers are informed that they may be subject to random home visits, which can involve searches. (Doc.

---

[2]The government has agreed to dismiss Count 2. (Doc. 41, p. 3, n. 3).

81, p. 9). If the probation officer suspects suspicious activity, she has the right to conduct a search of the residence unannounced, and she does not need a warrant. (Doc. 81, p. 9). When a probation officer has information that might warrant a search, she consults with a search team coordinator and a supervisor to get approval. (Doc. 81, p. 10). When probation officers are supervising probationers, they are "duty bound" to act on information they receive in order to protect the public. (Doc. 81, pp. 10-11).

Officer Esquivel was supervising Kurt Hankes when she participated in a search of his home on 9/28/11. (Doc. 81, p. 11). At the time she began supervising Mr. Hankes, Ms. Esquivel reviewed with him condition 5, which says that he must submit to search and seizure of his person or property by the probation department without a search warrant. (Doc. 81, p. 13).

Mr. Hankes' ex-girlfriend called Ms. Esquivel and informed her that she was sure that Mr. Hankes had weapons in his home, and she feared for her safety. (Doc. 81, p. 13). The ex-girlfriend had not been in Mr. Hankes' home for months. (Doc. 81, p. 29). Having weapons was a violation of Mr. Hankes' probation. (Doc. 81, p. 14).

Ms. Esquivel received calls from an FBI agent and an ATF agent regarding the allegation by the ex-girlfriend. She also discussed the situation with her supervisor. (Doc. 81, p. 14). Ms. Esquivel was concerned about the information but also was concerned about whether the allegation was true because Mr. Hankes and his ex-girlfriend were in a volatile relationship and a custody battle over their baby. (Doc. 81, pp. 14-15, 29). The woman had made allegations in the past and then retracted her statements. (Doc. 81, p. 15). Ms. Esquivel's probation notes from 9/28/11 at 9:30 am state that Agent Brandt called and told her that the ex-girlfriend, Gayle Grant, retracted her allegation and no longer believed there were weapons in the home, but because of Mr. Hankes' paranoia, he might have a handgun in his room by the bed. (Doc. 81, pp. 120-121).

Initially, Ms. Esquivel considered conducting a random home visit the next day, but after speaking with her supervisor, she decided to conduct a search. (Doc. 81, p. 16). She told an agent from the FBI or ATF of her intention. The agent asked if she could wait a few

days, but whether to search now or later was her decision to make subject to her supervisor's approval. (Doc. 81, p. 16). Other than the allegation from the ex-girlfriend, Ms. Esquivel had no concerns about Mr. Hankes. (Doc. 81, p. 39). Searches, however, may be conducted regardless of whether the probationer is compliant or not. (Doc. 81, p. 48). It is Ms. Esquivel's understanding that no level of suspicion is needed to conduct a full search of a probationer's home. (Doc. 81, pp. 50-51).

The morning of the search, the ex-girlfriend called and recanted her allegations. Ms. Esquivel consulted with the search team. They decided to conduct the search because they were ready to go and wanted to confirm whether the information about weapons in Mr. Hankes' home was true or not. (Doc. 81, p. 18). The probation office has a policy to respond any time there is any allegation involving weapons or drugs, even from an anonymous source. (Doc. 81, pp. 38-39). Mr. Hankes was contacted the morning of the search and advised that the probation officer was coming to his home. He was cooperative and came home, at which time he was advised that the home would be searched. (Doc. 81, p. 19). Mr. Hankes was handcuffed for officer safety and was walked inside the home. The search began. (Doc. 81, p. 20). Ms. Esquivel sat with Mr. Hankes in the kitchen during the search as part of the normal procedure. (Doc. 81, p. 20).

The search was a full search. Mr. Hankes was not asked for his consent. The search team consisted of 6 probation officers. Ms. Esquivel did not believe they would find anything at the home. (Doc. 81, pp. 40-41). Were it not for the office policy, Ms. Esquivel would not have conducted the search. (Doc. 81, p. 45).

The search revealed some ammunition and some type of explosive. Per normal procedure, the sheriff's department was called. ATF Agent Creighton Brandt was also notified. (Doc. 81, pp. 21-22). ATF agents said they were taking over and probation was free to leave. (Doc. 81, p. 22).

### ***Creighton Brandt***

Creighton Brandt is a special agent with ATF. (Doc. 81, p. 54). Agent Brandt received information from his supervisor, Rick Serrano, that an Assistant Special Agent in

charge of the Tucson FBI office advised him that Hankes, on felony probation, might possess firearms or ammunition. (Doc. 81, pp. 54-55). After speaking with Martha Esquivel, Agent Brandt made contact with the source of the information, Gayle Grant, who stated she believed Mr. Hankes had firearms and ammunition in a storage facility and possibly a gun at his home. (Doc. 81, pp. 56-57). ATF decided not to act on the information, but Agent Brandt called Monica Esquivel and told her that if she did a home inspection and found anything that would constitute a violation, she could call him if she needed help. (Doc. 81, p. 58).

When Agent Brandt was told that probation located ammunition and suspected explosives, that information was used to obtain a search warrant. (Doc. 81, pp. 59-60). The affidavit in support of the warrant relied exclusively on information provided by probation and not on any information from Ms. Grant. (Doc. 81, p. 61).

Agent Brandt went into the house to make contact with Mr. Hankes at about 3:00 p.m., before the warrant was signed by the judge at 8:40 p.m. (Doc. 81, p. 70). An Oro Valley detective was already on the scene. (Doc. 81, pp. 70-71). When Agent Brandt entered the house, a few items were pointed out to him, but he went directly to speak with Mr. Hankes and did not look through the house until the search warrant was obtained. (Doc. 81, p. 72). His report states that he did a visual inspection of the found ammunition before contacting Mr. Hankes. (Doc. 81, p. 73). The search warrant affidavit does not tell the judge that Agent Brandt had entered the house before securing the warrant. (Doc. 81, p. 110). He did not base the affidavit on any of his own personal observations. (Doc. 81, p. 115).

Sergeant Christopher Rogers of the Pima County Sheriff's Department bomb squad was in the house before Agent Brandt and probably did some kind of inspection. (Doc. 81, pp. 92-93). Other than the probation officers, no other law enforcement conducted a search prior to obtaining the search warrant. (Doc. 81, p. 110).

### *Rick Serrano*

Rick Serrano is a supervisory special agent with ATF. (Doc. 81, p. 127). Agent Serrano received a telephone call from FBI Agent Daneka Dedus. (Doc. 81, p. 129). Agent

Dedus explained that two weeks earlier, a woman stopped by the office and reported a person on probation in possession of a large number of firearms. (Doc. 81, pp. 128-129). Agent Serrano contacted Mr. Hankes' probation officer, Monica Esquivel. (Doc. 81, p. 129). He planned to look into the information and determine how to proceed. (Doc. 81, p. 130). Agent Serrano assigned the case to Agent Brandt. (Doc. 81, p. 131). Agent Serrano believed they had probable cause to search Mr. Hankes' home based on the information from the informant given to the FBI agent and Monica Esquivel, as well as Agent Brandt's observations at the residence during the search. (Doc. 81, pp. 132-133). Agent Serrano was very clear with Ms. Esquivel that he was not directing the probation officer to conduct a search. (Doc. 81, pp. 139-140).

**DISCUSSION:**

Defendant Hankes argues that the Fourth Amendment requires that the probation officer have reasonable suspicion to search a probationer's home and that a tip from an unreliable informant cannot form reasonable suspicion. He claims that if the probation search was in violation of the Fourth Amendment then all evidence discovered as a result of the federal search warrant must be suppressed because the warrant was based on evidence found during the unlawful search.

The government argues that a probation officer is authorized to search a person and his property without a search warrant, probable cause, or reasonable suspicion. No level of suspicion is required.

The Fourth Amendment requires that a search be conducted based on a warrant unless an exception is proven by the state. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068 (1985). The lawfulness of a search is based on the totality of the circumstances. *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695 (1981). When the search is of a probationer's home, the warrant requirement is relaxed, but the search still must be reasonable. *Griffin v. Wisconsin*, 483 U.S. 868, 873 and 879-80, 107 S.Ct. 3164, 3168, 3171-72 (1987). A warrantless search satisfies the Fourth Amendment where there is both reasonable suspicion and a probation condition that authorizes a warrantless search. *U.S. v.*

*Knights*, 534 U.S. 112, 112-22, 122 S.Ct. 587, 592-93 (2001).

Reasonable suspicion requires specific articulable facts that form the basis for particularized suspicion when considered with objective and reasonable inferences. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). Reasonable suspicion is a less demanding standard than probable cause and may be supported by less reliable information. *U.S. v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006), citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416 (1990). It depends on the content of the information and the degree of reliability, which are both considered in the totality of the circumstances analysis. *Id*. More information is required to establish reasonable suspicion if the tip has a low degree of reliability. *Id.*

In determining the reliability and veracity of an informant's tip, the totality of the circumstances must be considered. *U.S. V. Villasenor*, 608 F.3d 467 (9th Cir. 2010). The court should consider a number of factors. A known informant is more reliable than an anonymous informant. *Rowland*, 464 F.3d at 907. An informant who has a history of reliability is more reliable than an unproven informant. *Id*. at 908. The tip is more reliable if the basis of the informant's knowledge is known. *Id*. Predictive information about future events that is corroborated by police observation or involves a person's intimate affairs that could not be observed by the general public may be considered reliable, especially if it relates to suspicious activities rather than innocent conduct. *Id*.

Mr. Hankes' probation condition number 5 states that he must submit to search and seizure of his person or property by the adult probation department without a search warrant. The probation officer, Monica Esquivel, testified that if she suspected suspicious activity she could conduct a search of the home without a warrant.

The decision to search Mr. Hankes' home was based on information provided by Gayle Grant, Mr. Hankes' ex-girlfriend, that he had weapons in his home, in violation of his probation. The informant's identity was known. Her history of reliability however was questionable. She had made allegations in the past and then retracted them. She and Mr. Hankes were in a volatile relationship and a contentious child custody battle. Prior to the

search of the home, Ms. Esquivel was informed that Ms. Grant retracted her accusation. Ms. Grant did not provide the basis of her knowledge and had not been in Mr. Hankes' home for months. She provided no predictive information. The informant's information was not reliable and did not rise to the level of reasonable suspicion.

The information from the unlawful probation search was the sole basis for the search warrant obtained by the ATF agents. The Fourth Amendment's exclusionary rule applies to evidence that is obtained by means of an illegal search. *Wong Sun v. U.S.*, 371 U.S. 471, 484-88, 83 S.Ct. 407, 415-18 (1963). There is a clear causal connection between the illegal conduct and the evidence the defendant seeks to suppress. *See U.S. v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004).

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **GRANT** the motion to suppress evidence.

Government's counsel may serve and file written objections within 14 days. If objections are not timely filed, the parties' right to de novo review may be waived. No reply shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 9th day of January, 2013.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge